**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| In Re: Rare Breed Triggers Patent Litigation | 4:26-md-03176-ALM MDL 3176 |
| | ~~FILED UNDER SEAL~~ |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC., Plaintiffs, v. 80MILLS LLC, d/b/a TACTICAL TITAN SUPPLY, and PEARSON GARDNER, Defendants. | Civil Action No. 4:26-cv-00380-ALM |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC., Plaintiffs, v. CHRISTOPHER COPE, Defendant. | Civil Action No. 2:26-cv-00033-ALM |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC., Plaintiffs, v. DNT LLC, d/b/a DEEZ NUTZ TACTICAL, and ZACH MORROW, Defendants. | Civil Action No. 4:26-cv-00377-ALM |

| | |
|---|---|
| ABC IP, LLC, and RARE BREED TRIGGERS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> HANES TACTICAL, LLC, and DAMION TERRELL BENNETT, <br><br> Defendants. | Civil Action No. 4:26-cv-00369-ALM |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> HARRISON GUNWORKS LLC, and TYLER HARRISON, <br><br> Defendants. | Civil Action No. 4:26-cv-00379-ALM |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MARS TRIGGER, LLC, and PETER BRENNEN, <br><br> Defendants. | Civil Action No. 2:26-cv-00030-ALM |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MISTER GUNS, LLC, THOMAS CARTER II, and BRANDI CARTER | Civil Action No. 2:26-cv-00056-ALM |

| | |
|---|---|
| Defendants. | |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>STEVEN THANH NGUYEN, d/b/a POLY-MER PEW,<br><br>    Defendant. | Civil Action No. 4:26-cv-00425-ALM |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>OPTICS PLANET, INC., d/b/a ECENTRIA,<br><br>    Defendant. | Civil Action No. 4:26-cv-00521-ALM |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>PISTOLCAP LIMITED COMPANY, d/b/a FRISCO GUNS, and MORDEKHAI HAR-ROCH,<br><br>    Defendants. | Civil Action No. 2:26-cv-00053-ALM |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC.,<br><br>    Plaintiffs, | Civil Action No. 2:26-cv-00055-ALM |

v.

PROSOURCE FIREARMS, LLC,

    Defendant.

ABC IP, LLC, and RARE BREED TRIGGERS, INC.,

    Plaintiffs,

v.

SUPERIOR FIREARMS OF TEXAS, LLC,

    Defendant.

Civil Action No. 2:26-cv-00058-ALM

ABC IP, LLC, and RARE BREED TRIGGERS, INC.,

    Plaintiffs,

v.

Z3 PRODUCTIONS, LLC, d/b/a Z3PRO,

    Defendant.

Civil Action No. 4:26-cv-00367-ALM

**ABC IP, LLC, AND RARE BREED TRIGGERS, INC.'S CONSOLIDATED MOTION
FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   BACKGROUND ..................................................................................................4

    A.    Rare Breed's "Forced Reset" Trigger Technology ................................. 4

    B.    Plaintiffs ABC and RBT .......................................................................... 4

        1.    Rare Breed Spends Years and Millions to Pioneer and Defend a Market for Its Products .......................................................................... 5

        2.    Rare Breed's Products............................................................................ 6

        3.    The Asserted Patents.............................................................................. 7

    C.    The Defendants and Their Infringing Products ....................................... 7

        1.    The Defendants ...................................................................................... 8

            a)    80Mills LLC and Pearson Gardner .................................... 8

            b)    Kristopher Cope ................................................................. 9

            c)    DNT and Zach Morrow .................................................... 10

            d)    Hanes Tactical and Damion Bennett................................. 11

            e)    Harrison Gunworks and Tyler Harrison ........................... 11

            f)    MaRs Trigger and Peter Brennen ..................................... 12

            g)    Mister Guns LLC, Thomas Carter, and Brandi Carter.................. 13

            h)    Steven Nguyen .................................................................. 13

            i)    Optics Planet .................................................................... 14

            j)    PistolCap and Mordekhai Harroch.................................... 15

            k)    ProSource Firearms........................................................... 16

            l)    Superior Firearms of Texas............................................... 16

            m)    Z3 Productions ................................................................. 17

        2.    The Accused Products........................................................................... 17

            a)    The Atrius Selector ........................................................... 18

            b)    Products Similar to the Atrius Selector............................. 18

            c)    The Super Safety............................................................... 19

            d)    The ARC-Fire ................................................................... 19

            e)    Variations and Combinations of Accused Products...................... 20

    D.    Rare Breed's Efforts to Enforce Its Patents ........................................... 20

    E.    JPML Centralization Proceedings........................................................... 22

III.   LEGAL STANDARD ..........................................................................................22

i

**TABLE OF CONTENTS (Continued)**

**Page**

IV.   ARGUMENT ...............................................................................................23

    A.   Rare Breed Is Likely to Succeed on the Merits ...................................... 23

        1.   The Accused Products Likely Infringe ...................................... 23

            a)   The Asserted Claims Should Carry Their Plain Meaning ............ 23

            b)   Each Accused Product Satisfies That Plain Meaning ................... 24

                (i)   Direct Infringement Under § 271(a) ................................ 26

                (ii)   Indirect Infringement Under § 271(b) and (c) .................. 27

                (iii)   Platform Extenders.............................................................. 27

        2.   The Asserted Patents Are Valid and Enforceable.................................... 28

    B.   Rare Breed Is Suffering, and Will Continue to Suffer, Irreparable Harm Without Injunctive Relief........................................................................... 29

        1.   Rare Breed Is Losing Market Share in a Niche, Emerging Market. ......... 29

        2.   Each Day of Continued Infringement Erodes Rare Breed's Patent-Earned Lead Time ................................................................................... 30

        3.   Defendants' Prices—40–95% Below Rare Breed's—Have Reset Market Expectations and Will Permanently Anchor Rare Breed's Prices Lower. 31

        4.   Defendants Are Eroding Rare Breed's Innovator Reputation and Premium Brand Identity ....................................................................... 32

        5.   Each Day Without an Injunction Invites New Infringers Into a Market That Already Has Over 100 of Them ...................................... 34

        6.   Many Defendants Are Newly-Formed Entities Whose Maximum Per-Unit Profit Cannot Exceed Rare Breed's Per-Unit Loss—Making Any Future Judgment Likely Uncollectible ................................................... 34

    C.   The Balance of the Equities Favors the Requested Injunctive Relief.................. 35

        1.   Defendants Had Notice of Rare Breed's Patent Rights and Continued Selling Anyway............................................................................. 36

        2.   Defendants Built Their Business on Infringement................................. 37

        3.   Diversified Defendants Will Lose Only a Small Slice of Their Product Lines................................................................................ 38

    D.   The Requested PI Would Not Harm the Public Interest ..................................... 39

    E.   The Court Should Require No Security, or Alternatively, Nominal Security ...... 40

V.   CONCLUSION.....................................................................................................40

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABC Corp. I v. P'ship & Unincorporated Ass'ns Identified on Schedule "A"*,
  52 F.4th 934 (Fed. Cir. 2022) ......................................................................................22

*Apple Inc. v. Samsung Elecs. Co.*,
  809 F.3d 633 (Fed. Cir. 2015).....................................................................................39

*Aspen Tech., Inc. v. M3 Tech., Inc.*,
  569 F. App'x 259 (5th Cir. 2014) ................................................................................34

*Atrius Dev. Grp. Corp. v. ABC IP LLC*,
  IPR2025-01473 (P.T.A.B. Feb. 18, 2026) ..................................................................28

*Baker Hughes Inc. v. Nalco Co.*,
  676 F. Supp. 2d 547 (S.D. Tex. 2009), *aff'd,* 374 F. App'x 979 (Fed. Cir.
  2010) ............................................................................................................................32

*Bettcher Indus., Inc. v. Bunzl USA, Inc.*,
  692 F. Supp. 2d 805 (N.D. Ohio 2010).......................................................................29

*Cargill v. Garland*,
  602 U.S. 406 (2024)...................................................................................................4, 5

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*,
  664 F.3d 922 (Fed. Cir. 2012)...............................................................................36, 37

*City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*,
  636 F.2d 1084 (5th Cir. 1981) .....................................................................................40

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
  717 F.3d 1336 (Fed. Cir. 2013)........................................................................29, 32, 33

*EcoNova Inc. v. DPS Utah*,
  No. 12-cv-174, 2012 WL 5944257 (D. Utah Nov. 28, 2012)..........................29, 30, 35, 37

*Eli Lilly & Co. v. Premo Pharm. Lab'ys, Inc.*,
  630 F.2d 120 (3d Cir. 1980)....................................................................................34, 35

*EyeTicket Corp. v. Unisys Corp.*,
  155 F. Supp. 2d 527 (E.D. Va. 2001) ..........................................................................31

*Fred Hutchinson Cancer Rsch. Ctr. v. BioPet Vet Lab, Inc.*,
  No. 10-CV-616, 2011 WL 1119565 (E.D. Va. Mar. 1, 2011).................................28, 30

## TABLE OF AUTHORITIES (Continued)

**Page(s)**

*Gonza LLC v. Mission Competition Fitness Equip. LLC*,
No. 21-cv-771, 2021 WL 5657193 (W.D. Tex. Dec. 1, 2021) .........................................38, 39

*Hybritech Inc. v. Abbott Lab'ys*,
849 F.2d 1446 (Fed. Cir. 1988)..........................................................................................34, 35

*Kemin Foods, L.C. v. Pigmentos Vegetales del Centro A.A. de C.V.*,
240 F. Supp. 2d 963 (S.D. Iowa 2003) ....................................................................................36

*Lonza Walkersville, Inc. v. Adva Biotech., Ltd.*,
581 F. Supp. 3d 736 (D. Md. 2022) .........................................................................................30

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996) .......................................23

*Metalcraft of Mayville, Inc. v. The Toro Co.*,
848 F.3d 1358 (Fed. Cir. 2017).................................................................................................35

*Miche Bag, LLC v. Thirty One Gifts LLC*,
No. 10-cv-781, 2010 WL 3629686 (D. Utah Sept. 13, 2010)...................................................29

*Morris & Assocs., Inc. v. Cooling & Applied Tech., Inc.*,
2010 WL 4484640 (E.D.N.C. July 30, 2010) ..........................................................................30

*Nat'l Oilwell Varco, L.P. v. Auto-Dril, Inc.*,
No. 9-cv-85, 2011 WL 3648532 (E.D. Tex. Aug. 16, 2011)....................................................24

*Natera, Inc. v. NeoGenomics Lab'ys, Inc.*,
106 F.4th 1369 (Fed. Cir. 2024) .........................................................................................22, 23

*Oakley, Inc. v. Sunglass Hut Int'l*,
316 F.3d 1331 (Fed. Cir. 2003)................................................................................................23

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc)................................................................................24

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
659 F.3d 1142 (Fed. Cir. 2011).................................................................................................29

*Smith Int'l, Inc. v. Hughes Tool Co.*,
718 F.2d 1573 (Fed. Cir. 1983).............................................................................................36, 37

*Southern Snow Mfg. Co. v. SnoWizard Holdings, Inc.*,
No. 06-cv-9170, 2014 WL 1652436 (E.D. La. Apr. 24, 2014)................................................33

*Symbol Techs., Inc. v. Janam Techs. LLC*,
729 F. Supp. 2d 646 (D. Del. 2010)..........................................................................................35

## TABLE OF AUTHORITIES (Continued)

**Page(s)**

*Thorner v. Sony Comput. Ent. Am. LLC,*
669 F.3d 1362 (Fed. Cir. 2012)...................................................................................................24

*Titan Tire Corp. v. Case New Holland, Inc.,*
566 F.3d 1372 (Fed. Cir. 2009)...................................................................................................28

*Trebro Mfg., Inc. v. Firefly Equip., LLC,*
748 F.3d 1159 (Fed. Cir. 2014)...................................................................................................36

*In re Whole Foods Mkt., Inc., Greek Yogurt Mktg. & Sales Pracs. Litig.,*
No. 14-MC-2588, 2015 WL 5737692 (W.D. Tex. Sept. 30, 2015)........................................23

*Windsurfing Int'l v. AMF, Inc.,*
782 F.2d 995 (Fed. Cir. 1986).........................................................................................36, 37, 38

*Yang v. Does 1-89,*
No. 24-cv-922, 2024 WL 5190362 (E.D. Tex. Dec. 20, 2024) ...............................................30

**Statutes**

35 U.S.C. § 271(a) .......................................................................................................................26, 27

35 U.S.C. § 282..............................................................................................................................3, 22

**Other Authorities**

Federal Rule of Civil Procedure 65(c) ..............................................................................................40

Federal Rule of Civil Procedure 65(d)(2) .........................................................................................22

Plaintiffs ABC IP, LLC ("ABC") and Rare Breed Triggers, Inc. ("RBT") (collectively, "Plaintiffs" or "Rare Breed") by and through undersigned counsel, respectfully submit this Consolidated Motion for Preliminary Injunction.

## I.    INTRODUCTION

Rare Breed spent years and millions of dollars developing technology it has coined as "forced reset trigger" ("FRT®") technology—triggers that allow semi-automatic rifles to fire faster while remaining lawful. It endured a four-year legal battle with the Department of Justice ("DOJ") for the right to sell its FRT® products and finally cleared that path in May 2025. The Defendants here are moving to seize the market by selling infringing trigger products for as little as $20 compared to Rare Breed's $450—undercutting Rare Breed's pricing by up to 95%.

Defendants sell three products: the Super Safety, the ARC-Fire Trigger ("ARC-Fire"), and the Atrius Forced Reset Selector ("Atrius Selector") (the "Accused Products").[1] All three are cam-based devices. A cam is a common mechanical device that translates rotation into linear movement. In each Accused Product, a cam pushes against the trigger and bolt carrier as the firearm cycles to make the trigger reset between shots. *See* Luettke Decl. ¶¶ 18, 21, 24, 26. All three Accused Products share this same essential design, derived from the Super Safety, with only minor variations in form. A Super Safety was published by Defendants Timothy Hoffman ("Hoffman") and Hoffman Tactical LLC (collectively, the "Hoffman Defendants"), who publicly released manufacturing specifications and Super Safety 3D print files "for unrestricted download." Hoffman has admitted under oath that he provided "troubleshooting" assistance to "hundreds or thousands"

---

[1] Defendant Gunworks sells the MARC Selector, and Defendant DNT sells the Super Selektor; both are functionally identical to the Atrius Selector. Luettke Decl. ¶ 26. Rare Breed treats all three as the same for purposes of this Motion. Defendants DNT and OpticsPlanet sell the Disruptor (manufactured by Defendant Peak Tactical), which is not the subject of this Motion. Defendant MaRs also manufactures and sells infringing devices that are not the subject of this Motion.

of people building Super Safeties from his design files, and identified Defendants DNT, Polymer Pew, Z3 Productions, AS Designs, and Atrius by name as companies that make products "in accord with or based on" the Super Safety. In February 2026, the Eastern District of Tennessee preliminarily enjoined the Hoffman Defendants from selling the Super Safety after finding it likely infringes two of the Asserted Patents.[2] Yet every Defendant in this multi-district litigation ("MDL") has continued selling the Accused Products after receiving direct notice of Rare Breed's patent rights—whether through a pre-suit cease-and-desist letter, service of the operative complaint, or the public *Hoffman* preliminary injunction. (Rare Breed has separately moved for a preliminary injunction against AS Designs based on the same facts and theories presented here.)

The harm from these continued sales cannot be undone with money. Rare Breed launched the FRT-15® as a premium product line, supported by a premium brand identity and a no-discount pricing policy. Rare Breed later added to the FRT® family of products, introducing the FRT-15L3®, FRT-15C3™, FRT-MR3™, and the FRT-RD3™. Defendants have undercut that pricing dramatically: Defendants sell a Super Safety for as little as $20, the ARC-Fire for as little as $139, and the Atrius Selector for as little as $159—compared to Rare Breed's $450–$625 for its FRT® products. Defendants' pricing has forced Rare Breed to cut its FRT-15L3® price from $499 to $450 and ███████████████████████████████████ to attempt to preserve its market share. And because FRT® products are Rare Breed's entire business—it sells no other firearms or accessories—each lost sale threatens not just revenue, but the company's ability to operate, fund development, and recoup the investment that built this market from the ground up.

---

[2] The "Asserted Patents" include U.S. Patent No. 12,038,247 ("the '247 patent"); U.S. Patent No. 12,578,159 ("the '159 patent"); U.S. Patent No. 12,529,538 ("the '538 patent); U.S. Patent No. 12,031,784 ("the '784 patent"); U.S. Patent No. 12,636,403 ("the '403 patent"). The *Hoffman* court did not consider the '159, '538, or '403 Patents, which had not yet issued.

Meanwhile, most Defendants are newly formed entities with no publicly available financials, no reported revenue history, and no apparent hard assets—raising real doubt that any eventual damages award would be collectible.

The Court should grant a preliminary injunction because all four required factors favor relief. ***First***, Rare Breed is likely to succeed on the merits. Rare Breed's expert maps every limitation of the Asserted Claims[3] to the Accused Products, and the *Hoffman* court has already found that the Super Safety likely satisfies every limitation of claim 15 of the asserted '247 Patent and claim 1 of the asserted '784 Patent. The Asserted Patents are also presumed valid under 35 U.S.C. § 282. ████ ████████████████████████████████████████████████████

████████████████████ ▮ █████████████████████████████████████████ with new infringing sellers appearing weekly. Defendants' undercutting prices have already forced Rare Breed to lower its prices. And Rare Breed and the Defendants are direct, head-to-head competitors selling competing products to the same niche customer base—exactly the circumstances in which the Federal Circuit has held lost market share and price erosion to be irreparable. ***Third***, the balance of equities tips decisively toward Rare Breed: it faces permanent competitive displacement in the market it created, while Defendants face only the consequence of ceasing sales they chose to continue after notice. ***Fourth***, an injunction would not harm any critical public interest. To the contrary, the DOJ told the *Hoffman* court that enforcing Rare Breed's patents advances public safety—and Rare Breed's DOJ settlement affirmatively requires Rare Breed to enforce its patents against products it has a good faith argument infringe.

---

[3] The "Asserted Claims" include: claim 15 of U.S. Patent No. 12,038,247; claims 1, 3, 6, 7, 9–11, and 14-17 of U.S. Patent No. 12,578,159; claims 1–5 and 8–13 of U.S. Patent No. 12,529,538; claims 1, 3, and 4 of U.S. Patent No. 12,031,784; and claims 14, 15, 17, 29, 30, 32, 38, and 39 of U.S. Patent No. 12,636,403.

Rare Breed respectfully asks the Court to grant the requested preliminary injunction and enjoin Defendants from continuing to sell the Accused Products pending trial.

## II.    BACKGROUND

### A.    Rare Breed's "Forced Reset" Trigger Technology

Rare Breed's FRT® products are trigger components for semi-automatic rifles that allow faster follow-up shots—but still require a separate trigger pull for each shot. Luettke Decl. ¶ 12. In a standard semi-automatic rifle, a shooter manually releases the trigger to reset. *Id*. ¶ 11. In a "forced reset" trigger, once a shot is fired, the rifle's cycling motion mechanically resets the trigger, reducing manual movement and enabling faster follow-up shots. *Id.* ¶ 12. Rare Breed FRT® products are distinct from fully automatic triggers, which fire continuously with a single sustained pull. *Cargill v. Garland*, 602 U.S. 406, 410 (2024).

### B.    Plaintiffs ABC and RBT

The Plaintiffs—ABC and RBT—are respectively a Delaware LLC and a Texas corporation that design, manufacture, and sell FRT® products covered by ABC's patents. Colvin Decl., Exs. A–B. ABC owns U.S. Patent Nos. 12,038,247; 12,031,784; 12,578,159; 12,529,538; and 12,636,403 (collectively, the "Asserted Patents")[4] and has exclusively licensed them to RBT. De-Monico Decl., Exs. A–D.

---

[4] Plaintiffs' operative complaints against MaRs, Mister Guns, Optics Planet, PistolCap, ProSource, Superior, and Cope assert the '247, '784, '159, '538, and '723 patents. In other cases, before transfer to this Court, Plaintiffs filed Motions for Leave to Amend, requesting leave to file amended complaints and assert additional patents. These motions were mooted by transfer. *See* L.R. CV-7(j). Plaintiffs have filed Motions for Leave to Amend. *80Mills*, Dkt. 38; *Cope*, Dkt. 15; *DNT*, Dkt. 41; *Hanes*, Dkt. 37; *Gunworks*, Dkt. 33; *MaRs*, Dkt. 27; *Mister Guns*, Dkt. 28; *Polymer Pew*, Dkt. 26; *Optics Planet*, Dkt. 49; *PistolCap*, Dkt. 25; *ProSource*, Dkt. 25; *Superior Firearms*, Dkt. 27; *Z3 Prods.*, Dkt. 44. Specifically, Plaintiffs have pending motions to assert the '159, '538, and '403 patents against 80Mills, Hanes, Gunworks, and Z3; to assert the '784 and '403 patents against Polymer Pew; to assert the '159, '538, '784, and '403 patents against DNT; and to assert the '403 against the remaining Defendants.

### 1.    Rare Breed Spends Years and Millions to Pioneer and Defend a Market for Its Products

Rare Breed set out to build and commercialize a trigger to deliver faster follow-up shots while remaining lawful and semi-automatic. DeMonico Decl. ¶¶ 7–9. That effort required extended concept and prototype work, followed by roughly eight months of testing and redesign to turn the proof of concept into a marketable product. *Id.* ¶ 9. Rare Breed brought the FRT-15®—the first commercially available "forced reset" trigger—to market at the end of 2020. *Id.* ¶ 10.

About nine months after Rare Breed launched the FRT-15®, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") sent a cease-and-desist letter asserting the product was a machine gun. *Id.* ¶ 11. Rare Breed disagreed and filed multiple declaratory judgment actions. *Id.* The DOJ later brought a civil action and obtained a preliminary injunction that shut down Rare Breed's operations and prevented Rare Breed from enforcing its patents. *Id.* ¶¶ 12–13.

Soon after the Supreme Court held that the federal government had exceeded its authority in regulating bump stocks, *Cargill*, 602 U.S. at 415, the Northern District of Texas declared Rare Breed's products were lawful semi-automatic triggers. DeMonico Decl. ¶ 14. In May 2025, Rare Breed and the DOJ settled. *Id.* Under the settlement, Rare Breed's FRT® products could be lawfully sold subject to certain conditions, including that "[Rare Breed] will not develop or design FRTs for use in any handgun," and will enforce its patents to prevent infringement. *Id.* ¶ 15, Ex. E ¶¶ 7, 9. Rare Breed also agreed "to promote the safe and responsible use of its devices." *Id.* ¶ 15, Ex. E ¶ 15.

Rare Breed has built a 12-person team and expanded its product line to seven commercially available FRT® models spanning two firearm platforms. DeMonico Decl. ¶¶ 6, 18–20. ABC owns a portfolio of 15 issued U.S. "forced reset" patents; all are exclusively licensed to RBT; five are asserted in Rare Breed's Consolidated Motion for Preliminary Injunction. *Id.* ¶ 25.

5

### 2. Rare Breed's Products

Rare Breed currently sells seven FRT® models across two firearm platforms. DeMonico Decl. ¶¶ 18–20, Exs. F-L.

| RBT Product | Platform | Patent(s) | Price | DeMonico Decl. |
|---|---|---|---|---|
| FRT-15L3® | AR-15 | '223,[5] '003, '336, '807, '403 | $450 | Ex. F |
| FRT-15L3® Flat | AR-15 | '223, '003, '336, '807, '403 | $450 | Ex. G |
| FRT-15C3™ | AR-15 | '247, '159, '403 | $450 | Ex. H |
| FRT-MR3™ | AR-15 (piston-driven) | '223, '003, '336, '807, '403 | $525 | Ex. I |
| FRT-MR3™ Flat | AR-15 (piston-driven) | '223, '003, '336, '807, '403 | $525 | Ex. J |
| FRT-RD3™ (SEF) | HK MP5/SP5 | '223, '003, '336, '807, '403 | $615 | Ex. K |
| FRT-RD3™ (AMBI) | HK MP5/SP5 | '223, '003, '336, '807, '403 | $620 | Ex. L |

All seven models operate in three modes—safe, traditional semi-automatic, and "forced reset." DeMonico Decl. ¶ 21. The FRT-15C3™ incorporates technology covered by the '247, '159, and '403 Patents, *id.* ¶¶ 19, 26, and Rare Breed has products in development that will incorporate technology covered by the '784 Patent, including products designed for larger-caliber platforms such as .308-based systems, *id.* ¶ 22. Rare Breed continues to invest heavily in new FRT® designs and ███████████████████████████

FRT® products are Rare Breed's entire business: all of Rare Breed's revenue comes from its FRT® products and related parts. *Id.* ¶ 24. Rare Breed has historically positioned those products as premium offerings, maintaining a no-discount policy as part of its business practice. *Id.* ¶ 60. Rare Breed has mainly sold direct-to-consumer. *Id.* ¶ 71. But the influx of infringing products has ███████████████████████████████████████████ ████████ *Id.* Because FRT® products are durable products designed to last the life of the rifle

---

[5] U.S. Patent Nos. 10,514,223 (the "'223 Patent"); 11,724,003 (the "'003 Patent"): 12,036,336 (the "'336 Patent"); and 12,274,807 (the "'807 Patent").

6

in which they are installed, customer relationships are long-lived. *Id.* ¶ 73. Rare Breed has more

than ▮▮▮ customers who own multiple FRT® products across multiple rifles. *Id.* ¶ 74.

### 3. The Asserted Patents

As summarized below, the Asserted Patents claim related innovations in FRT® design covering the trigger, the safety selector, and the locking interface with the bolt carrier.

| Asserted Patents | Asserted Claim(s) | Description |
| --- | --- | --- |
| U.S. Patent No. 12,038,247 | 15 | A trigger mechanism with two selectable modes—standard and "forced reset"—in which a cam mechanically resets the trigger and prevents it from being pulled again until the bolt carrier returns fully forward. Luettke Decl. ¶ 33; Colvin Decl., Ex. KK. |
| U.S. Patent No. 12,578,159 | 1, 3, 6, 7, 9-11, 14-17 | A trigger mechanism with a three-position safety selector—safe, standard semi-automatic, and "forced reset" semi-automatic—in which a cam and safety selector control whether manual pressure must release to reset the trigger. Luettke Decl. ¶ 36; Colvin Decl., Ex. LL. |
| U.S. Patent No. 12,529,538 | 1-5, 8-13 | A three-position cam selector—safe, standard semi-automatic, and "forced reset" semi-automatic—that replaces the standard safety and mechanically resets the trigger during cycling. Luettke Decl. ¶ 35; Colvin Decl., Ex. MM. |
| U.S. Patent No. 12,031,784 | 1, 3, 4 | A locking device that shifts between blocking and permitting trigger pull, controlled by contact between the bolt carrier and an extension on the locking member. Luettke Decl. ¶ 34; Colvin Decl., Ex. NN. |
| U.S. Patent No. 12,636,403 | 14, 15, 17, 29, 30, 32, 38, 39 | A trigger device in which the firearm's cycling action causes the hammer to contact the trigger, resetting both the hammer and trigger after each shot. The device can be operated in either of two modes: a standard semi-automatic mode (using a conventional disconnector) or a forced-reset semi-automatic mode. Luettke Decl. ¶ 37; Colvin Decl., Ex. OO. |

### C. The Defendants and Their Infringing Products

This Motion seeks preliminary injunctive relief against Defendants in 13 member actions now centralized in MDL 3176. Each sells one or more Accused Products—principally the Super Safety, the ARC-Fire, the Atrius Selector, and related components or platform-extension devices

7

designed for use with them—that infringe one or more of the Asserted Patents. Each Defendant has continued selling the Accused Products after being notified of Rare Breed's patent rights. De-Monico Decl. ¶¶ 34–37; Colvin Decl., Exs. F, J, L, N, P, T, CC; App. B. Rare Breed is not, with this motion, seeking preliminary relief against cassette-style infringing devices such as the "Disruptor," sold by Peak Tactical LLC and its distributors.[6] The subsections below introduce each Defendant in turn; the Accused Products are described in Section II.C.2, below.

### 1.    The Defendants

The 13 Defendant groups fall into overlapping roles: some manufacture Accused Products, some resell them (sourcing from those manufacturers or from non-party suppliers), and some do both. Each Defendant received notice of Rare Breed's patent rights through one or more channels: a pre-suit cease-and-desist letter, service or other notice of a complaint, and—since February 11, 2026—the publicly filed *Hoffman* preliminary injunction decision adjudicating two of the Asserted Patents.[7] Each Defendant continued to sell the infringing devices despite notice. The paragraphs below describe each Defendant group in turn.

### a)    80Mills LLC and Pearson Gardner

80Mills LLC, doing business as Tactical Titan Supply, is a Wyoming LLC registered as a foreign entity in Ohio, with a principal place of business in Cheyenne, Wyoming. Colvin Decl.,

---

[6] The '403 Patent issued on May 26, 2026. It applies to all the Accused Products across the MDL, and, in particular, to the Disruptor. In a separate action involving different patents and a different accused product, the District of Wyoming denied a TRO and preliminary injunction against Peak Tactical, LLC. *ABC IP, LLC v. Peak Tactical LLC*, No. 26-cv-18, Dkt. No. 39 (D. Wyo. Feb. 13, 2026). Rare Breed has appealed. *See ABC IP, LLC v. Peak Tactical*, No. 26-1527, Dkt. 26 (Fed. Cir. Apr. 13, 2026)

[7] The Hoffman Defendants are parties to this MDL but are not the subject of this Motion. A district court in the Eastern District of Tennessee already enjoined them on February 11, 2026. *ABC IP, LLC v. Hoffman*, No. 25-cv-389 (E.D. Tenn. Feb. 11, 2026), ECF No. 46. That order only reaches the Hoffman Defendants.

Ex. C at 1; *ABC IP, LLC v. 80Mills LLC*, No. 25-cv-1262, Dkt. No. 30 at 8 (N.D. Ohio Feb. 27, 2026) ("80Mills Ans.") (now consolidated in this MDL). Pearson Gardner ("Gardner") is its organizer and maintains an address at 11545 Twin Mills Ln, Chardon, Ohio 44024. Colvin Decl., Ex. C at 1; 80Mills Ans. at 8-9. 80Mills LLC and Gardner are referred to collectively as "80Mills." 80Mills sells the Super Safety (3 Position)—along with the Super Safety Cam Kit (CPM10V/A2), pre-cut triggers, spare cam levers, and the Super Safety FCG Completion Kit. Colvin Decl., Ex. D; App. A at 1. The company has operated since 2024 and sold infringing products since at least March 2025. Colvin Decl., Ex. C at 1; No. 25-cv-1262, Dkt. No. 1 (N.D. Ohio June 17, 2025). 80Mills sells infringing products and other firearm-related products. Colvin Decl., Ex. D. 80Mills has sold infringing products through its website (tacticaltitansupply.com), its Facebook page, and private Facebook groups. *Id.*; DeMonico Decl. ¶ 48. A public records search did not surface any information about 80Mills's revenue or assets. Colvin Decl. ¶ 7. Rare Breed first put 80Mills on notice of the '247 Patent on March 31, 2025, via cease-and-desist letter and has since asserted all Asserted Patents in the pending Fourth Amended Complaint filed May 26, 2026. DeMonico Decl., Ex. M; *ABC IP, LLC v. 80Mills LLC*, No. 26-cv-380, Dkt. No. 39 (E.D. Tex. May 26, 2026). 80Mills continues to sell infringing products. DeMonico Decl. ¶ 48.

### b)      Kristopher Cope

Kristopher Cope ("Cope")[8] is an individual residing in Las Vegas, Nevada. DeMonico Decl. ¶ 49. Cope sells the Super Safety (3 Position) in at least two types of kits: (1) a kit including a cam and cam lever and (2) a kit including a cam, cam lever, trigger, hammer, and associated springs. DeMonico Decl. ¶ 50. Cope has sold infringing products since at least early 2025. *ABC IP, LLC v. Cope*, No. 26-cv-33, Dkt. No. 1 (E.D. Tex. Jan. 13, 2026). Cope sells the Super Safety

---

[8] Plaintiffs previously incorrectly identified this Defendant as "Christopher Cope."

9

devices while attending and participating at gun shows. DeMonico Decl. ¶ 50. A search of public records did not surface any information about Cope's revenue or assets. Colvin Decl. ¶ 8. Rare Breed has since asserted all Asserted Patents as of the pending Second Amended Complaint filed May 26, 2026; No. 26-cv-33, Dkt. No. 16 (E.D. Tex. May 26, 2026) (now consolidated in this MDL). Cope continues to sell Super Safety products. DeMonico Decl. ¶ 50.

### c)    DNT and Zach Morrow

DNT LLC, doing business as Deez Nutz Tactical, is an Idaho LLC with a principal place of business in Idaho Falls, Idaho. Colvin Decl., Ex. E; *ABC IP, LLC v. DNT LLC*, No. 26-cv-377, Dkt. No. 28 at 2 (E.D. Tex. Nov. 21, 2025) (now consolidated in this MDL). Zach Morrow ("Morrow") is its sole member and operator and resides and conducts business from the same Idaho Falls address. Colvin Decl., Ex. E; No. 26-cv-377, Dkt. No. 28 at 12 (E.D. Tex. Nov. 21, 2025). Morrow and DNT LLC are referred to collectively as "DNT." DNT sells Super Safety products, including full kits and individual components such as cams, levers, triggers, and related parts. Colvin Decl., Ex. F; App. A at 1–2. DNT also manufactures Super Safety products and related components— including DB9 Super Safety kits, cam levers, centering blocks, and other specialized parts. *Id*. DNT has operated since 2024 and sold infringing products since at least March 2025. Colvin Decl., Ex. E; No. 26-cv-377, Dkt. No. 1 at 3 (E.D. Tex. June 6, 2025). DNT advertises and sells products through, at minimum, its website (deeznutztactical.com), Facebook page, and private Facebook groups. Colvin Decl., Ex. F; DeMonico Decl. ¶ 51. A public records search did not reveal information on DNT's revenue or assets. Colvin Decl. ¶ 11. Rare Breed first put DNT on notice of the '247 Patent on March 31, 2025, via a cease-and-desist letter. DeMonico Decl., Ex. N. Rare Breed has since asserted all Asserted Patents against DNT as of the pending Sixth Amended Complaint filed May 27, 2026. No. 26-cv-377, Dkt. No. 42 (E.D. Tex. May 27, 2026). DNT continues to sell

the accused Super Safety products and related infringing devices, including ARC-Fire, Super Selektor, and Disruptor products. Colvin Decl., Ex. F.

### d)    Hanes Tactical and Damion Bennett

Hanes Tactical LLC, doing business as Hanes Tactical, is a Texas LLC with a principal place of business in Fort Bliss, Texas. Colvin Decl., Ex. G. Damion Terrell Bennett ("Bennett") is its owner and operator, and previously did business as "Hanes Tactical" as a sole proprietor before forming Hanes Tactical LLC. *Id.*; DeMonico Decl. ¶ 52. Hanes Tactical LLC and Bennett are referred to collectively as "Hanes." Hanes manufactures and sells Super Safety products and related components, including full kits and individual components such as cams, levers, and precut triggers. Colvin Decl., Ex. H; App. A at 2; DeMonico Decl. ¶ 52. The company has operated since February 2025 and has sold infringing products since at least March 2025. Colvin Decl., Ex. G; *ABC IP, LLC v. Hanes Tactical, LLC*, No. 26-cv-369, Dkt. No. 1 at 3 (E.D. Tex. June 5, 2025) (now consolidated in this MDL). Hanes sells through at least Facebook posts and direct messaging. Colvin Decl., Ex. H. A search of public records did not surface any information about Hanes's revenue or assets. *Id.* ¶ 14. Rare Breed first put Hanes on notice of the '247 Patent on March 28, 2025, via a cease-and-desist letter, and has since asserted all Asserted Patents in the pending Fourth Amended Complaint filed May 26, 2026. DeMonico Decl., Ex. O; No. 26-cv-369, Dkt. No. 38 (E.D. Tex. May 26, 2026). Hanes continues to sell the accused Super Safety products. DeMonico Decl. ¶ 52.

### e)    Harrison Gunworks and Tyler Harrison

Harrison Gunworks LLC is an Idaho LLC with a principal place of business in Pocatello, Idaho. Colvin Decl., Ex. I. Tyler Harrison ("Harrison") is its sole operator and directs the complained-of activities of the company. *Id*. Harrison Gunworks LLC and Harrison are referred to collectively as "Gunworks." Gunworks sells reset trigger products, including "Super Safety" kits

11

and MARC reset triggers. *Id.* Ex. J; App. A at 2. The company has operated since at least 2024 and has sold infringing products since at least March 2025. Colvin Decl., Ex. I; *ABC IP, LLC v. Harrison Gunworks LLC*, No. 25-cv-299, Dkt. No. 1 at 4 (D. Idaho June 6, 2025) (now consolidated in this MDL). Gunworks sells infringing products and related firearm fire-control components through its website, harrisongunworks.com. Colvin Decl., Ex. J. A search of public records did not surface any information about Gunworks's revenue or assets. *Id.* ¶ 17. Rare Breed first put Gunworks on notice of the '247 Patent on March 28, 2025, via cease-and-desist letter and has since asserted all Asserted Patents against the Accused Products in the pending Third Amended Complaint filed May 27, 2026. DeMonico Decl., Ex. P; No. 26-cv-379, Dkt. 34 (E.D. Tex. May 27, 2026). Gunworks continues to sell the accused products. Colvin Decl., Ex. J.

### f)      MaRs Trigger and Peter Brennen

MaRs Trigger, LLC is a Texas LLC with a principal place of business in Deport, Texas. Colvin Decl., Ex. K at 2. Peter Brennen ("Brennen") directs its complained-of activities. *Id*. at 1; DeMonico Decl. ¶ 34. MaRs Trigger, LLC and Brennen are referred to collectively as "MaRs." MaRs manufactures and sells reset trigger products, including a 3-position "Super Safety" in partial, complete, and preinstalled kit configurations, at around $139.99. *Id.* Ex. L; App. A at 2. The company has operated since at least 2025 and sold infringing products since at least early 2026. Colvin Decl., Ex. K; *ABC IP, LLC v. MaRs Trigger LLC*, No. 26-cv-30, Dkt. No. 1 (E.D. Tex. Jan. 12, 2026) (now consolidated in this MDL). MaRs sells infringing products and related firearm fire-control components through its website, marstrigger.com. Colvin Decl., Ex. L. A public records search did not surface any information about MaRs's revenue or assets. *Id.* ¶ 20. Rare Breed put MaRs on notice of the '247 and '784 Patents around March 2025 via a conference call with Rare Breed's president and has since asserted all Asserted Patents in the Second Amended Complaint

12

filed May 27, 2026. DeMonico Decl. ¶ 34; No. 26-cv-30, Dkt. No. 28 (E.D. Tex. May 27, 2026). MaRs has continued selling the accused products. Colvin Decl., Ex. L.

### g) Mister Guns LLC, Thomas Carter, and Brandi Carter

Mister Guns, LLC, doing business as Mr. Guns, is a Texas LLC with a principal place of business in Plano, Texas. Colvin Decl., Ex. M at 1; *ABC IP, LLC v. Mister Guns, LLC*, No. 26-cv-414, Dkt. No. 25 at 2 (E.D. Tex. Apr. 27, 2026) (now consolidated in this MDL). Thomas Carter II and Brandi Carter are Mister Guns, LLC's sole members and directors and operate and direct the complained-of activities of the company. Colvin Decl., Ex. M at 1-2. Mister Guns, LLC, Thomas Carter II, and Brandi Carter are referred to collectively as "Mister Guns." Mister Guns sells reset trigger products, including the Atrius Selector Drop-in 3 Position for AR-15, at approximately $199.99. *Id.* Ex. N; App. A at 2. The company has operated since at least 2011 and has sold infringing products since at least early 2026. Colvin Decl., Ex. M; No. 26-cv-56, Dkt. No. 1 (E.D. Tex. Jan. 22, 2026) ("Mister Guns Compl."). Mister Guns sells infringing products alongside other firearm-related products through its retail storefront and its website, shop.misterguns.com. Colvin Decl., Exs. N, O. A search of public records did not surface any information about Mister Guns's revenue or assets. *Id.* ¶ 24. Rare Breed first put Mister Guns on notice of the '247 and '784 Patents via the filing of the complaint and has since asserted the '159 and '403 Patents in the pending Second Amended Complaint filed May 26, 2026. Mister Guns Compl.; No. 26-cv-41, Dkt. No. 29 (E.D. Tex. May 26, 2026). Mister Guns has continued selling the accused products since. DeMonico Decl. ¶ 37.

### h) Steven Nguyen

Steven Thanh Nguyen ("Nguyen") does business as Polymer Pew ("Polymer Pew") from his residence in Rosenberg, Texas. DeMonico Decl. ¶ 53. Nguyen maintains a private mailbox for Polymer Pew in Rosenberg, Texas. *Id.* Polymer Pew sells reset trigger products, including "Super

13

Safety" kits and components (partial and complete kits, triggers, levers, and related parts) at prices typically ranging from approximately $10 to $117. Colvin Decl., Ex. P; App. A at 3. Polymer Pew also sells the ARC-Fire at prices ranging from approximately $199.95 to $249.95. Colvin Decl., Ex. P; App. A at 3. Polymer Pew has sold infringing products since at least 2025. *ABC IP, LLC v. Nguyen*, No. 26-cv-425, Dkt. No. 1 (E.D. Tex. June 26, 2025) (now consolidated in this MDL). Polymer Pew sells infringing products alongside related firearm fire-control components and accessories through its website, polymerpew.com, as well as through social media websites including Facebook. Colvin Decl., Exs. P, Q. A search of public records did not surface any information about Polymer Pew's revenue or assets. Colvin Decl. ¶ 27. Rare Breed first put Polymer Pew on notice of the '247 Patent on March 31, 2025, via cease-and-desist letter, and has since asserted all Asserted Patents in the pending Third Amended Complaint filed May 27, 2026. DeMonico Decl., Ex. Q; No. 26-cv-425, Dkt. No. 27 (E.D. Tex. May 27, 2026). Nguyen has continued selling the accused products since. Colvin Decl., Ex. P.

### i)    Optics Planet

Optics Planet, Inc. ("Optics Planet"), doing business as Ecentria, is an Illinois corporation with a principal place of business in Arlington Heights, Illinois. Colvin Decl., Ex. R at 1; *ABC IP, LLC v. Optics Planet, Inc.*, No. 26-cv-521, Dkt. No. 36 at 1 (E.D. Tex. Apr. 13, 2026) (now consolidated in this MDL). Optics Planet operates a large e-commerce retail platform through which it sells firearm-related products nationwide, including in this District. Colvin Decl., Ex. S. Optics Planet sells reset trigger products, including the "Super Safety," the Atrius Selector, the AS Designs ARC-Fire, and the Partisan Triggers "Disruptor," in multiple configurations and variants. Colvin Decl., Ex. T. These products are offered through Optics Planet's website, opticsplanet.com, including standalone components, kits, and preinstalled assemblies. *Id*. The company has operated since 2000 and has sold infringing products since at least January 2026. Colvin Decl., Ex. U; No.

14

26-cv-521, Dkt. No. 1 (E.D. Tex. Jan. 29, 2026). Optics Planet sells infringing products alongside a wide range of firearm accessories and equipment. Colvin Decl., Ex. S. Rare Breed first put Optics Planet on notice of the '247 and '784 Patents (among other patents) at least by the filing and service of the initial complaint and has since asserted all Asserted Patents against the Accused Products in the pending Second Amended Complaint filed May 27, 2026. No. 26-cv-521, Dkt. No. 1 (E.D. Tex. Jan. 29, 2026); *id*. Dkt. No. 50 (E.D. Tex. May 27, 2026). Optics Planet has continued selling the accused products since. Colvin Decl., Ex. T.

### j) PistolCap and Mordekhai Harroch

PistolCap Limited Company, doing business as Frisco Guns ("Frisco Guns"), is a Texas LLC with a principal place of business in Frisco, Texas. Colvin Decl., Ex. V; *ABC IP, LLC v. PistolCap Ltd. Co.*, No. 26-cv-53, Dkt. No. 23 at 2 (E.D. Tex. Apr. 27, 2026) ("PistolCap Ans.") (now consolidated in this MDL). Mordekhai Harroch ("Harroch") is an owner and managing member of Frisco Guns, directing and controlling the company's operations and the complained-of activities. Colvin Decl., Ex. V; PistolCap Ans. at 2. Frisco Guns and Harroch are referred to collectively as "PistolCap." PistolCap has sold reset trigger products, including the Three-Position Atrius Selector, via its website, friscoguns.com. Colvin Decl., Ex. W; PistolCap Ans. at 4. The company has operated since 2020 and has sold infringing products since at least January 2026. Colvin Decl., Ex. V; No. 26-cv-53, Dkt. No. 1 (E.D. Tex. Jan. 22, 2026). PistolCap sold these products alongside other firearm-related items. Colvin Decl., Ex. W. PistolCap conducts sales through its website. *Id*. A public records search did not surface information on PistolCap's revenues or assets. *Id.* ¶ 34. Rare Breed put Defendants on notice of the '247 and '784 Patents via the filing of the complaint and has since asserted the '159 and '403 Patents in the pending Second Amended Complaint. No. 26-cv-53, Dkt. No. 1 (E.D. Tex. Jan. 22, 2026), Dkt. No. 26 (E.D. Tex. May 26, 2026).

### k)    ProSource Firearms

ProSource Firearms, LLC ("ProSource") is a Texas LLC with an established place of business in Farmersville, Texas. Colvin Decl., Ex. X; *ABC IP, LLC v. ProSource Firearms, LLC*, No. 26-cv-55, Dkt. No. 23 at 2 (E.D. Tex. Apr. 27, 2026). ProSource sells infringing Atrius Selector products and Super Safety products. DeMonico Decl. ¶ 54. The company has operated since 2020 and has sold infringing products since at least January 2026. Colvin Decl., Ex. X; No. 26-cv-55, Dkt. No. 1 (E.D. Tex. Jan. 22, 2026). ProSource sells through its physical storefronts. DeMonico Decl. ¶ 54. A search of public records did not surface any information about ProSource's revenue or assets. Colvin Decl. ¶ 36. Rare Breed first put ProSource on notice of the '247 and '784 Patents on January 22, 2026 via the filing of the original complaint and has since asserted all Asserted Patents in the pending Second Amended Complaint filed on May 26, 2026. No. 26-cv-55, Dkt. No. 1 (E.D. Tex. Jan. 22, 2026), Dkt. No. 26 (E.D. Tex. May 26, 2026). ProSource has continued selling Atrius Selector and Super Safety products since. *Id.* Dkt. No. 23 at 4.

### l)    Superior Firearms of Texas

Superior Firearms of Texas, LLC ("Superior"), doing business as Superior Outfitters, is a Texas LLC with a principal place of business in Tyler, Texas. Colvin Decl., Exs. Y, Z. Superior sells infringing Atrius Selector products. DeMonico Decl. ¶ 55. Superior resells the Atrius Selectors manufactured by Atrius Development Group Corporation, Inc. *ABC IP, LLC v. Superior Firearms of Tex., LLC*, No. 26-cv-58, Dkt. No. 15-6 (E.D. Tex. Mar. 25, 2026) (now consolidated in this MDL). The company has operated since 2018 and has sold infringing products since at least January 2026. Colvin Decl., Ex. Y; No. 26-cv-58, Dkt. No. 1 (E.D. Tex. Jan. 22, 2026). Superior sells through its physical storefront. DeMonico Decl. ¶ 55. A search of public records did not surface any information about Superior's revenue or assets. Colvin Decl. ¶ 39. Rare Breed first put Superior on notice of the '247 and '784 Patents on January 22, 2026 via the filing of the original

16

complaint and has since asserted all Asserted Patents in the pending Second Amended Complaint filed on May 26, 2026. No. 26-cv-58, Dkt. No. 1 (E.D. Tex. Jan. 22, 2026), Dkt. No. 28 (E.D. Tex. May 27, 2026).

### m)      Z3 Productions

Z3 Productions, LLC ("Z3"), doing business as Z3Pro, is an Oklahoma LLC with a business address in Nichols Hills, Oklahoma. Colvin Decl., Exs. AA, BB. Z3 sells Super Safety products, including full kits, individual components, and assembly accessories, with listed prices including approximately $80 for the "CPM-10v/A2 AR Super Safety Kit" (which includes the Super Safety cam, lever, detents, and assembly accessories) and $35 for the "Pre-Cut AR15 Trigger," a trigger precut for assembly with the Super Safety. Colvin Decl., Ex. CC; App. A at 4. Z3 sells through its website, https://www.z3pro.com, the Z3 Pro Facebook page (https://www.facebook.com/ze.pro.912984/), and private Facebook groups. Colvin Decl., Exs. CC, DD; DeMonico Decl. ¶ 56. A search of public records did not surface any information about Z3's revenue or assets. Colvin Decl. ¶ 44. Rare Breed first put Z3 on notice of the '247 Patent on April 1, 2025, via a cease-and-desist letter, and has since asserted all Asserted Patents in the pending Third Amended Complaint filed May 26, 2026. DeMonico Decl. ¶ 34, Ex. R; *ABC IP, LLC v. Z3 Prods., LLC*, No. 26-cv-367, Dkt. No. 45 (E.D. Tex. May 26, 2026) (now consolidated in this MDL). Z3 has continued selling the accused Super Safety products since. Colvin Decl., Ex. CC.

### 2.      The Accused Products

The Accused Products—the Atrius Selector, the Super Safety, the ARC-Fire, and the MARC Selector—are reset trigger mechanisms designed to be installed in standard semi-automatic AR-platform rifles. Luettke Decl. ¶¶ 17, 20, 24, 26. Each operates on the same core principle: a cam, a common mechanical device that translates rotation into linear movement, engages the rifle's fire-control components and mechanically resets the trigger as the bolt carrier cycles, preventing

17

the trigger from being pulled again until the bolt returns to a safe-to-fire position. *Id.* ¶¶ 18, 20, 24, 26. Each has three operating modes—safe, traditional semi-automatic, and "forced reset"—the same three-position safety-and-reset architecture claimed in the Asserted Patents. *Id.*

### a)      The Atrius Selector

The Atrius Selector—marketed in both single-sided and ambidextrous variants—is manufactured by Atrius Development Group Corporation. Colvin Decl., Ex. EE. Like the Super Safety, the Atrius Selector replaces the rifle's safety selector with a cam-and-lever mechanism that engages the rifle's trigger and bolt carrier. Luettke Decl. ¶ 24. Once installed, it provides three selector positions—safe, traditional semi-automatic, and "forced reset." During firing, its cam mechanically resets and locks the trigger as the bolt carrier cycles. *Id.* The Atrius Selector is sold directly through Atrius's website (atrius.dev) and through resellers including Optics Planet, Mister Guns, PistolCap, ProSource, and Superior. Rare Breed's technical expert, Brian Luettke, maps each element of the Asserted Claims to the Atrius Selector. *Id.* Exs. C, F, J, & M.

### b)      Products Similar to the Atrius Selector

Other manufacturers sell selectors that mimic the Atrius Selector. Luettke Decl. ¶¶ 26–27. As one example, the "MARC Selector" is manufactured by Cornfire Arsenal. Colvin Decl., Ex. FF. The MARC Selector is sold through resellers, including Defendant Gunworks. As another example, Atrius has alleged that at least some "Super Selektor" products are not manufactured by Atrius and are sold through resellers, including Defendant DNT. Colvin Decl., Ex. F at 106-07. Once installed, these products provide three selector positions—safe, traditional semi-automatic, and "forced reset"—and during firing, their cam mechanically resets and locks the trigger as the bolt carrier cycles. Luettke Decl. ¶¶ 26–27. The MARC Selector and Super Selektor are substantially identical to the Atrius Selector, Luettke Decl. ¶ 26, and Rare Breed treats all three the same

in this Motion. Any analysis of the Atrius Selector therefore applies equally to the MARC Selector and Super Selektor, even where not expressly stated.

### c)      The Super Safety

The Super Safety replaces the rifle's safety selector (the selector switch that alternates between "safe" and "fire" modes) with a cam-and-lever mechanism that engages the rifle's trigger and bolt carrier. Luettke Decl. ¶¶ 17–18. Once installed, during firing when the bolt carrier cycles, the Super Safety's cam mechanically resets the trigger and holds it forward until the bolt carrier returns to the safe to fire position. *Id.* ¶ 18. Rare Breed's technical expert, Brian Luettke, maps each element of the Asserted Claims to the Super Safety. *Id.* Exs. B, E, G, I, & L.

Defendant Hoffman released the Super Safety and published its design files online, which allowed third parties—including Defendants—to manufacture and sell their own versions. *ABC IP, LLC v. Hoffman*, No. 25-cv-389, Dkt. 26 at 4, 7 (E.D. Tenn. Jan. 26, 2026). In February 2026, the Eastern District of Tennessee preliminarily enjoined the Hoffman Defendants from selling the Super Safety after finding it likely infringes two of the Asserted Patents. *ABC IP, LLC v. Hoffman*, No. 25-cv-389, Dkt. 45, 46 (E.D. Tenn. Feb. 11, 2026).

### d)      The ARC-Fire

AS Designs manufactures the ARC-Fire. *See ABC IP, LLC v. AS Designs LLC*, No. 4:26-cv-00370, Dkt. 28, at 5 (E.D. Tex. Apr. 27, 2026). The ARC-Fire installs inside the rifle's trigger mechanism, adding a cam and locking structure that sit alongside the existing trigger components. Luettke Decl. ¶ 20. Mr. Luettke's declaration explains the ARC-Fire's functionality in detail and shows element by element how it practices the Asserted Claims. *Id.* Exs. A, D, H, & K. The ARC-Fire is sold in three configurations: (1) installed in a firearm, (2) as standalone devices or kits, or (3) as discrete components.

### e)    Variations and Combinations of Accused Products

The Accused Products are sold in various combinations and installations. All of these products enable the same mechanical firearm component operation.

***Standalone devices and kits*:** Several Defendants—including DNT and Cope—bundle the device with the additional fire-control parts needed to operate the Accused Product in a firearm. *See* DNT's "D2 Complete FCG" kits and Cope's "Complete Kit," App. A at 1–2. ***Components:*** A subset of Defendants sells individual cams, levers, and similar parts as replacement or upgrade components—for example, 80Mills's "Super Safety Extra Lever" and "Super Safety Cam Kit (CPM10V/A2)," and Polymer Pew's "SS Cam (4140 Steel)" and "SS Lever (4140)." App. A at 1, 3. ***Platform-extension products:*** Several Defendants sell components, lowers, and kits that adapt an Accused Product for firearms beyond the standard AR-15—for example, MaRs's MP5-platform extender enabling the Super Safety to operate on the HK MP5, Z3's .22-caliber handgun conversion, and DNT's DB9-platform extender kits enabling the Super Safety to operate on the DB9. App. A at 2, 4.

### D.    Rare Breed's Efforts to Enforce Its Patents

Rare Breed vigorously enforced its patents before it was enjoined from doing so in September 2023, and has aggressively renewed those efforts since its May 2025 DOJ settlement. To start, in September 2021, Rare Breed sued Big Daddy Unlimited and Wide Open Enterprises in the Northern District of Florida over their "Wide Open Trigger." *See Rare Breed Triggers v. Big Daddy Enters. Inc.*, C.A. No. 1:21-cv-149-RH-HTC (N.D. Fla. Sept. 15, 2021). The court granted a preliminary injunction in December 2021, finding the Wide Open Trigger "was plainly copied from the FRT-15." Order Granting Preliminary Injunction, *Rare Breed Triggers v. Big Daddy Enters. Inc.*, C.A. No. 1:21-cv-149-RH-HTC (N.D. Fla. Dec. 30, 2021), ECF No. 47. The case resolved in October 2022 with a consent judgment and permanent injunction. *See* Consent Judgment

20

and Permanent Injunction, *Rare Breed Triggers v. Big Daddy Enters. Inc.*, C.A. No. 1:21-cv-149-RH-HTC (N.D. Fla. Oct. 19, 2022), ECF No. 194.

For the next several years, the DOJ's enforcement action shut down Rare Breed's operations and foreclosed any patent enforcement during the injunction's pendency. As a result, although the '247 and '784 Patents both issued in July 2024, Rare Breed could not assert them without risking contempt. DeMonico Decl. ¶¶ 11–14. The May 2025 settlement not only ended that prohibition but also imposed upon Rare Breed an affirmative obligation to enforce its patents against products it has a good faith belief infringe any of its patents. *Id.* ¶¶ 14–15, Ex. E.

Rare Breed has therefore resumed enforcing its patents. Since the May 2025 settlement, Rare Breed has filed more than 45 patent-infringement actions, including the 13 at issue in this preliminary injunction. DeMonico Decl. ¶ 17. Two of those actions involve preliminary injunction litigation and the same types of accused products as those here. In the first, Rare Breed sued the Hoffman Defendants, the original publishers of the open-source Super Safety design files. *ABC IP, LLC v. Hoffman*, No. 25-cv-389, Dkt. 1 (E.D. Tenn. Dec. 23, 2025). On January 13, 2026, the court granted a TRO. After a three-day evidentiary hearing, it also entered a preliminary injunction on February 11, 2026. The court found the Super Safety likely infringes claim 15 of the '247 Patent and claim 1 of the '784 Patent, and that each preliminary injunction factor favored Rare Breed. *Hoffman*, Dkt. 45, ¶¶ 7–9, 19, 31, 35, 40; Colvin Decl., Ex. GG. Hoffman also admitted under oath—and the court found—that five MDL Defendants make products "in accord with or based on" the Super Safety design: Z3 Productions, DNT, Polymer Pew, Atrius, and AS Designs. *Hoffman*, Dkt 45, ¶ 15. Second, Rare Breed has separately moved for a preliminary injunction against AS Designs based on the same patents and theories presented here. *Rare Breed Triggers, Inc. v. AS Designs, Inc.*, No. 26-cv-370, Dkt. 28 (E.D. Tex. Apr. 27, 2026). The Court granted Rare

Breed's unopposed motion for expedited discovery in that matter. Discovery is now proceeding. *Id.* Dkt. 31 (May 1, 2026).

### E.    JPML Centralization Proceedings

The Judicial Panel on Multidistrict Litigation ("JPML") created this MDL on April 2, 2026. *In re: Rare Breed Triggers Pat. Litig.*, MDL No. 3176, Dkt. 44 (J.P.M.L. Apr. 2, 2026). The Panel found that the actions presented common questions of fact about whether multiple Defendants' products infringe Rare Breed's patents, and that centralization would "eliminate duplicative discovery, prevent inconsistent pretrial rulings—especially regarding claim construction, patent validity, and the appropriateness of injunctive relief—and conserve the resources of the parties, their counsel, and the judiciary." *Id.* at 2. The Panel also observed that limiting the MDL too narrowly "may lead to inconsistent injunction decisions" across multiple courts. *Id.* at 4. The panel subsequently issued a Conditional Transfer Order on April 3, 2026, transferring additional related actions consistent with this reasoning. *Id.* Dkt. 45.

## III.    LEGAL STANDARD

This Court has power to grant injunctive relief "in accordance with the principles of equity" and "on such terms as the court deems reasonable." 35 U.S.C. § 283. Pursuant to Federal Rule of Civil Procedure 65(d)(2), this injunction should bind Defendants, their "officers, agents, servants, employees, and attorneys," and anyone in "active concert or participation" with Defendants and their officers, agents, servants, employees, or attorneys. To obtain a preliminary injunction, the movant must show: (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm absent preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Natera, Inc. v. NeoGenomics Lab'ys, Inc.*, 106 F.4th 1369, 1375 (Fed. Cir. 2024). Likelihood of success on the merits is governed by Federal Circuit law; "the other factors are governed by the law of the regional circuit." *ABC Corp. I v. P'ship & Unincorporated Ass'ns*

22

*Identified on Schedule "A"*, 52 F.4th 934, 941 (Fed. Cir. 2022). All factors favor relief here.

On questions of federal law, an MDL transferee court applies the law of its own circuit. *See, e.g.*, *In re Whole Foods Mkt., Inc., Greek Yogurt Mktg. & Sales Pracs. Litig.*, No. 14-MC-2588, 2015 WL 5737692, at *3 (W.D. Tex. Sept. 30, 2015).

## IV.    ARGUMENT

The Court should grant a preliminary injunction. Rare Breed is likely to succeed on the merits—a conclusion the *Hoffman* court has already reached as to two of the Asserted Patents after a three-day evidentiary hearing. Rare Breed will suffer irreparable harm absent relief. The balance of equities tips in Rare Breed's favor. No public interest weighs against an injunction; in fact, a preliminary injunction here supports the public interest — a position the DOJ itself has endorsed.

### A.    Rare Breed Is Likely to Succeed on the Merits

"To show likelihood of success on the merits, a patentee must show (1) it will likely prove infringement, and (2) its infringement claim will likely withstand challenges to validity and enforceability." *Natera*, 106 F.4th at 1375. Rare Breed satisfies both elements.

#### 1.    The Accused Products Likely Infringe

Determining the likelihood of infringement involves a two-step analysis: (1) The court first construes the asserted claims and then (2) compares those construed claims to the accused products. *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003). Applying that framework here shows likely infringement.

##### a)    The Asserted Claims Should Carry Their Plain Meaning

First, the Court should apply the Asserted Claims' plain and ordinary meaning. Claim construction is a question of law for the Court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Courts generally construe claim terms according to their "ordinary and customary meaning," which is the meaning the terms would have

23

[had] to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc). Courts depart from that rule in limited circumstances—namely, when the patentee "acts as its own lexicographer" (by expressly redefining a claim term) or "disavows the full scope of a claim term" (by limiting the invention in the specification or during prosecution). *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

The Asserted Patents' claims use familiar terms for firearm components—such as "trigger," "hammer," "disconnector," "cam/cam selector," "lever," and "bolt carrier"—to describe trigger mechanism operations. Colvin Decl., Exs KK – OO. These terms are widely used in the firearms industry, including in reference materials describing AR-pattern trigger assemblies. *See, e.g.*, Colvin Decl., Exs. HH – II; Luettke Decl. ¶ 43; *see also Nat'l Oilwell Varco, L.P. v. Auto-Dril, Inc.*, No. 9-cv-85, 2011 WL 3648532, at *24 (E.D. Tex. Aug. 16, 2011) (holding no construction was necessary for "commonly used words that can be given their plain and ordinary meaning"). The infringement analysis thus involves a straightforward comparison between the plain language of the Asserted Claims and Defendants' Super Safety and ARC-Fire products.

### b) Each Accused Product Satisfies That Plain Meaning

Rare Breed's technical expert Brian Luettke maps, element by element, how each Accused Product practices each Asserted Patent claim under its plain meaning. Luettke Decl., Exs. A-M. Mr. Luettke spent twenty-two years as a Special Agent with ATF. *Id.* ¶ 6. He has testified as an expert in federal and state court forty-one times, including on the mechanical operation and classification of forced-reset triggers. *Id.* ¶ 7. His analysis establishes the required likelihood that the Accused Products infringe one or more claims of the Asserted Patents.

Another federal court has already reached that conclusion. After a three-day evidentiary hearing, the Eastern District of Tennessee found that the Super Safety meets every limitation of

claim 15 of the '247 Patent and claim 1 of the '784 Patent. *ABC IP, LLC v. Hoffman*, No. 25-cv-389, Dkt. 45, ¶ 8 (E.D. Tenn. Feb. 11, 2026); Colvin Decl., Ex. GG. The court found Mr. Luettke's testimony as "credible" and found that the limitations of those two claims "were met by the Super Safety." *Id.* It further concluded that the defendants there "mischaracterized the teachings of the '784 Patent and how the claimed inventions operate." *Id.* ¶ 9. And it found they had "failed to raise a substantial question of either infringement or validity." *Id.* ¶¶ 7, 19.

Those conclusions are persuasive authority here, especially because the *Hoffman* court evaluated the same device, on the same expert testimony, against two of the same Asserted Patents. Defendant Hoffman himself testified at the Tennessee hearing that Defendants DNT, Polymer Pew, Z3 Productions, and AS Designs manufacture products "in accord with or based on" the Super Safety design. *Hoffman*, Dkt. 45 ¶ 15. Brian Luettke is the same expert the *Hoffman* court credited after live cross-examination, and he applies the same element-by-element analysis here, supplemented by claim charts and exhibits specific to the Super Safety. Luettke Decl. Exs. B, E, G, I, & L. And the two claims the Tennessee court found infringed—claim 15 of the '247 Patent and claim 1 of the '784 Patent—are both asserted in this Motion.

The same framework extends to the Atrius Selector and ARC-Fire. Each operates on the same core mechanical principle that the Tennessee court evaluated. *See* Luettke Decl. ¶¶ 16–27, Exs. A–M.

Here, each Accused Product likely infringes one or more Asserted Patents in each configuration in which it is sold. Infringement turns on three variables: which Accused Product (Super Safety, Atrius Selector, or ARC-Fire); which sales configuration; and which Asserted Patent. There are four sales configurations. An *installed device* is an Accused Product already mounted in a firearm at the point of sale. A *complete kit* bundles the Accused Product with every additional

25

part needed to install it—*e.g.* trigger, hammer, springs, and the like—so the buyer can assemble the patented combination without sourcing anything else. A *standalone component* is a single piece of an Accused Product sold on its own, such as a cam or lever, useful only as a replacement or upgrade within the patented assembly. A *platform-extender* adapts an Accused Product for use in firearms beyond the standard AR-15—including MP5, MCX, MPX, and .22LR variants—either as a pre-installed lower or as a separate adapter kit. Some Asserted Patents require installation in a firearm; others are satisfied by the device alone. The chart below maps, for each Accused Product configuration, the applicable infringement theory—direct under 35 U.S.C. § 271(a), or indirect under § 271(b) and (c).

| Device | Configuration | '247 | '538 | '159 | '784 | '403 |
|--------|---------------|------|------|------|------|------|
| Atrius Selector | Installed | Direct | — | Direct | Direct | Direct |
| | Complete Kit | Indirect | — | Indirect | Direct | Indirect |
| | Platform-Extender | Indirect | — | Indirect | Indirect | Indirect |
| Super Safety | Installed | Direct | Direct | Direct | Direct | Direct |
| | Complete Kit | Indirect | Direct | Indirect | Direct | Indirect |
| | Component | Indirect | Indirect | Indirect | Indirect | Indirect |
| | Platform-Extender | Indirect | Indirect | Indirect | Indirect | Indirect |
| ARC-Fire | Installed | Direct | — | Direct | Direct | Direct |
| | Complete Kit | Indirect | — | Indirect | Direct | Indirect |
| | Component | Indirect | — | Indirect | Indirect | Indirect |
| | Platform-Extender | Indirect | — | Indirect | Indirect | Indirect |

### (i)     Direct Infringement Under § 271(a)

When an Accused Product is sold pre-installed in a firearm, the firearm contains every limitation of the Asserted Claims and directly infringes under § 271(a). Luettke Decl. ¶ 50. Appendix A identifies the Defendants and specific products at issue, together with the record exhibits documenting each product.

26

### (ii)    Indirect Infringement Under § 271(b) and (c)

For Asserted Patents that require installation in a firearm, sales of the Accused Products and their non-staple components indirectly infringe. Defendants supply articles with no substantial non-infringing use and market each product for use in the patented combination. The infringing conduct takes three forms.

*Complete kits.* Defendants, including DNT and Cope, sell bundled kits that pair an Accused Product with every additional part needed to put the patented combination into operation. *See, e.g.*, DNT's "D2 Complete FCG [Fire Control Group]" kits and Cope's "Complete Kit." App. A at 1. The bundling itself reflects affirmative marketing for the infringing configuration.

*Standalone components.* Individual cams, levers, detents, and triggers sold as replacements or upgrades do not embody every limitation of any asserted claim on their own. But they are non-staple articles adapted to no purpose other than completing the patented combination. Luettke Decl. ¶ 52. A loose Super Safety cam or ARC-Fire lever blocker is useless except in the patented assembly. Luettke Decl. ¶¶ 47, 52.

### (iii)    Platform Extenders

Components, lowers, and kits that adapt an Accused Product for firearms beyond the standard AR-15—including MP5, MCX, MPX, and .22LR variants—straddle both theories. When sold as a fully installed assembly, such as the Mars Trigger MP5 Lower with installed Super Safety sold by Optics Planet, App. A at 4, the resulting firearm directly infringes under § 271(a). When sold separately as an adapter, these products indirectly infringe under § 271(b) and (c): they have no substantial non-infringing use, and they are marketed specifically to extend an Accused Product into additional platforms.

Across these configurations and platforms, each Defendant directly or indirectly infringes at least one claim of the Asserted Patents. The chart above identifies the applicable infringement

27

theory for each Accused Product configuration; Appendix A details, for each Defendant, every product it sells in each configuration; and Mr. Luettke's claim charts at Exhibits A-M provide the element-by-element analysis.

### 2.     The Asserted Patents Are Valid and Enforceable

The Asserted Patents are presumed valid at all stages of the case, including on a preliminary injunction. *See Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009). To defeat preliminary injunctive relief on validity grounds, Defendants must raise a "substantial question" as to the patents' validity. *Id.* at 1379. Only if Defendants do so would the burden shift back to Rare Breed to show they are likely to succeed on validity at trial. *Fred Hutchinson Cancer Rsch. Ctr. v. BioPet Vet Lab, Inc.*, No. 10-CV-616, 2011 WL 1119565, at *2 (E.D. Va. Mar. 1, 2011) (citing *Titan Tire*, 566 F.3d at 1377).

Defendants have not raised any challenge to overcome the presumption of validity. Defendants have been on notice of Rare Breed's patents since at least the filing of the complaints against them. *See supra* § II.C.1. In a number of cases, Defendants were notified of the Asserted Patents prior to the filing of the complaint, through cease-and-desist letters or a conference call. *See infra* § IV.C. Despite this notice of the Asserted Patents and their application to Defendants' products, none of the Defendants subject to this Motion have challenged the validity of the Asserted Patents. Only one defendant in this case—Atrius Development Group Corp., who is not subject to this Motion—filed a petition for *inter partes* review of the '247 Patent, which the Patent Trial and Appeal Board denied. *See* Notice of Decisions on Institution, *Atrius Dev. Grp. Corp. v. ABC IP LLC*, IPR2025-01473 (P.T.A.B. Feb. 18, 2026), Paper No. 20. The Asserted Patents are therefore entitled to the presumption of validity here. *Titan Tire*, 566 F.3d at 1377.

The '403 Patent issued on May 26, 2026—just two days ago. The Examiner considered all prior art ever asserted against the Asserted Patents and still allowed the patent without any

28

rejections. Thus, all previously asserted invalidity defenses based on prior art were considered by the Examiner and not found to prevent patentability of the '403 Patent claims.

**B.    Rare Breed Is Suffering, and Will Continue to Suffer, Irreparable Harm Without Injunctive Relief**

Defendants are actively selling the Accused Products, causing actual harm to Rare Breed now that cannot be fully compensated with money damages. The Federal Circuit has recognized that lost market share, price erosion, reputational harm, and lost business opportunities are classic forms of irreparable harm that money cannot remedy. *See Miche Bag, LLC v. Thirty One Gifts LLC*, No. 10-cv-781, 2010 WL 3629686, at *3 & n.27 (D. Utah Sept. 13, 2010) (collecting Federal Circuit cases). Each form—and more as discussed below—is present here.[9]

**1.    Rare Breed Is Losing Market Share in a Niche, Emerging Market.**

Lost market share supports irreparable harm, especially when the accused infringer is a direct competitor. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1152–54 (Fed. Cir. 2011). It is "often irreparable" to force a patentee to compete against products that "incorporate and infringe its own patented inventions." *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d

---

[9] Factors that courts have found to negate irreparable harm are not present here: Rare Breed has not licensed its patents to third parties, *see* DeMonico Decl. ¶¶ 5, 31, and it practices its own patented inventions, *id.* ¶ 22; *see supra* § II.B.2. It also moved promptly to enforce its rights and did not unreasonably delay. The range of time after filing complaint and seeking PI ranges from three to 11.5 months. Courts have found even waiting over two years between learning of infringement and moving for a preliminary injunction reasonable, and any delay did not defeat a PI in the right context. *See, e.g.*, *Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 692 F. Supp. 2d 805, 821–22 (N.D. Ohio 2010) (holding timing of request for injunction was reasonable because the plaintiff offered a reasonable explanation for the over-two-year gap between the plaintiff's knowledge of infringement and request for an injunction; denying injunction on grounds unrelated to delay). This is especially true here given the scope of infringement, number of cases filed, the pending JPML centralization decision, and Plaintiffs' resources limitations, especially in light of increasing infringement. *See, e.g.*, *Robert Bosch*, 659 F.3d at 1155 (weighing whether patentee practices its invention and whether it licensed the patent); *EcoNova*, 2012 WL 5944257, at *14 (finding patentee's nine-month wait in seeking a preliminary injunction reasonable under the circumstances).

1336, 1345 (Fed. Cir. 2013). So too here: the parties compete head-to-head in a niche market, and the patented technology is Rare Breed's entire business. DeMonico Decl. ¶ 24.

Lost market share is especially hard to repair in a small, emerging market for durable goods. *See Morris & Assocs., Inc. v. Cooling & Applied Tech., Inc.*, 2010 WL 4484640, at *9 (E.D.N.C. July 30, 2010) (finding irreparable harm in specialized, durable equipment market); *see also Fred Hutchinson*, 2011 WL 1119565, at *4 (finding irreparable harm where there was no means of recapturing a lost customer); *Lonza Walkersville, Inc. v. Adva Biotech., Ltd.*, 581 F. Supp. 3d 736, 750 (D. Md. 2022) (recognizing that early displacement in an emerging market can permanently reshape customer and dealer relationships). Irreparable harm is particularly acute when the patented product is the core of the patentee's business. *See EcoNova Inc. v. DPS Utah*, No. 12-cv-174, 2012 WL 5944257, at *14 (D. Utah Nov. 28, 2012).

Here, Defendants' cheaper copies are resetting price expectations, so it is difficult for Rare Breed to win customers back. The market is rapidly saturating with competing products, creating uncertainty about the market share that will remain for Rare Breed's current and future products. DeMonico Decl. ¶ 76. The harm here is exacerbated because, like in *EcoNova*, FRT® products are Rare Breed's entire business. *Id.* ¶ 24. Each infringing sale by Defendants thus does not simply chip away at market share; it weakens Rare Breed's ability to develop products, sustain operations, and recoup its investment to create and defend this market. *Id.* ¶ 78.

### 2. Each Day of Continued Infringement Erodes Rare Breed's Patent-Earned Lead Time

A patent gives its holder time to build expertise, customer relationships, and a technological lead before competitors arrive. Money cannot give that time back once infringement takes it away. *See, e.g.*, *Yang v. Does 1-89*, No. 24-cv-922, 2024 WL 5190362, at *4 (E.D. Tex. Dec. 20, 2024) (holding the plaintiff's "lost exclusivity is neither quantifiable nor adequately compensable

30

and is thus irreparable"); *see also EyeTicket Corp. v. Unisys Corp.*, 155 F. Supp. 2d 527, 548 (E.D. Va. 2001). Here, Defendants' widespread infringement has taken away Rare Breed's opportunity to develop its position as the industry leader. The window was already narrow: the Northern District of Texas did not declare Rare Breed's products lawful until July 2024, and Rare Breed's hard-earned DOJ settlement did not open the market until May 2025. Infringement then exploded—closing that market before Rare Breed could secure the lead its patents were designed to provide. *See* § II.C, *supra*.

### 3. Defendants' Prices—40–95% Below Rare Breed's—Have Reset Market Expectations and Will Permanently Anchor Rare Breed's Prices Lower

Rare Breed sells its patented FRT® products at $450, $525, and approximately $615. De-Monico Decl. ¶ 59. Defendants sell their infringing products for drastically cheaper, between $20 and $269. App. A.

| Accused Product | Defendants' Price Range | RBT Comparator | % Undercut |
|---|---|---|---|
| Super Safety (complete kits) | $20–$179 | $450 | 60%-95% |
| ARC-Fire (complete kits) | $139–$249 | $450 | 44%–69% |
| Atrius Selector | $159–$269 | $450 | 40%–64% |

App. A. Those discounts—up to 95%—put sustained downward pressure on Rare Breed's pricing in a niche market where customers directly compare competing trigger systems side by side. *Id.*; Eichmann Decl. ¶¶ 6–7, 25–29.

That pressure is already producing concrete, irreversible changes to how Rare Breed does business. For example, Rare Breed has historically sold its FRT® products as premium, direct-to-consumer products and maintained a no-discount policy as a matter of brand identity. DeMonico Decl. ¶ 60. But in response to the influx of competing infringing products, Rare Breed has been

forced to lower prices and ████████████████████████████████████████████ to preserve market share. *Id.* ¶ 77.

The market is also acclimating to Defendants' discounted pricing. For example, a YouTube comparison channel touted AS Designs' ARC-Fire as costing about half of Rare Breed's product. *Id.* Ex. V. Once customers and dealers come to demand forced reset triggers at Defendants' low prices, Rare Breed will be unlikely to restore premium pricing and win back customer relationships and market share it spent years to finally build. *See Baker Hughes Inc. v. Nalco Co.*, 676 F. Supp. 2d 547, 554 (S.D. Tex. 2009), *aff'd,* 374 F. App'x 979 (Fed. Cir. 2010).

### 4. Defendants Are Eroding Rare Breed's Innovator Reputation and Premium Brand Identity

Reputational injury and loss of goodwill are also established forms of irreparable harm. *See Douglas Dynamics*, 717 F.3d at 1344. Two types of reputational harm exist here: distorted prices and loss of innovator reputation. First, because customers can come to expect lowered prices over time, a patentee's effort to return prices to premium levels can seem unwarranted to consumers, which damages a patentee's reputation in the marketplace. *Baker Hughes*, 676 F. Supp. 2d at 554.

That risk is concrete here. Rare Breed launched the FRT-15L3® at $499 and held that price as part of a premium, no-discount brand identity. DeMonico Decl. ¶ 60. Facing Defendants' substantially lower-priced Accused Products, Rare Breed was forced to cut its retail price to $450 in August 2025—a step it had previously refused to take as a matter of brand positioning. *Id.* ¶ 77 Once Defendants' pricing is enjoined, customers who internalized the lower reference prices could perceive any move by Rare Breed to restore its prior pricing as opportunistic rather than corrective. *Baker Hughes*, 676 F. Supp. 2d at 554; *see also* Eichmann Decl. ¶¶ 26–29 (reference-pricing effects persist beyond the period of competition).

32

Second, loss of innovator reputation. Infringement erodes the patentee's status as a market innovator—the hard-won perception that a company, not its competitors, brought the technology to market first. That loss can be irreparable. *Douglas Dynamics*, 717 F.3d at 1344–45; *see also Southern Snow Mfg. Co. v. SnoWizard Holdings, Inc.*, No. 06-cv-9170, 2014 WL 1652436, at *6–7 (E.D. La. Apr. 24, 2014) (finding irreparable reputational harm where infringement allowed competitors to incorporate patentee's innovations into its products, undermining patentee's distinctiveness and exclusivity as innovator); Eichmann Decl. ¶¶ 43–45.

Such is the case here. Rare Breed pioneered "forced reset" technology and protected that innovation through its patents. DeMonico Decl. ¶¶ 25–31. That status is under attack each day Defendants' sales continue. Public commentary already incorrectly credits Defendants with the innovations Rare Breed actually pioneered. For example, in response to a Rare Breed Facebook post promoting the FRT-15C3™—which incorporates technology covered by the '247, '159, and '403 Patents—a commenter asked whether the FRT-15C3™ was "based on the super safety" and suggested Rare Breed had adapted the competing product's concept. *Id.* ¶ 66, Ex. W.

That premise is exactly backwards. The mechanical "forced reset" mechanism embodied in the FRT-15C3™ traces back to U.S. Patent No. 7,398,723, filed by Brian Blakley in April 2003 and assigned to ABC before the Hoffman Defendants or others released or sold any cam-operated designs. DeMonico Decl. ¶ 67. The '247 and '159 Patents that protect the FRT-15C3™ are Blakley's continued refinement of the same cam-reset technology—both name Blakley as sole inventor, both are assigned to ABC, and both expressly incorporate the '723 by reference. *See* Colvin Decl., Exs. KK ('247 Patent) at 1:50–60, LL ('159 Patent) at 2:5–15. The Hoffman Defendants' Super Safety design was not released until sometime in 2025, more than twenty years later. *See ABC IP, LLC v. Hoffman, No. 25-cv-389*, Dkt. 14 at 7 (E.D. Tenn. Jan. 07, 2026). The

33

foundational cam-reset concept thus originated with Blakley's 2003 invention, and ABC owns the patent rights to that technology and its refinements.

The Facebook exchange in Exhibit H is a small example of a larger problem. That a customer would credit the Super Safety with technology patented nearly two decades before it existed—on Rare Breed's social media, from a member of its own customer base—illustrates how each day of continued sales by Defendants further erodes Rare Breed's hard-won innovator status.

### 5. Each Day Without an Injunction Invites New Infringers Into a Market That Already Has Over 100 of Them

The absence of injunctive relief can embolden additional infringers, compounding harm beyond what damages can address. *Eli Lilly & Co. v. Premo Pharm. Lab'ys, Inc.*, 630 F.2d 120, 137 (3d Cir. 1980) (affirming preliminary injunction where market practice of competitors launching products when a patent was challenged compounded irreparable harm); *see also Hybritech Inc. v. Abbott Lab'ys*, 849 F.2d 1446, 1456 (Fed. Cir. 1988) (identifying as a factor supporting irreparable harm that "in the absence of the injunction, other potential infringers will be encouraged to infringe.") That risk is far from hypothetical. Hoffman Tactical publicly released Super Safety 3D print files "for unrestricted download." *ABC IP, LLC v. Hoffman*, No. 25-cv-389, Dkt. 45 at 9 ¶ 18 (E.D. Tenn. Feb. 11, 2026). The problem is widespread: Rare Breed has identified scores of sellers of infringing products, with new entrants appearing weekly. DeMonico Decl. ¶ 58. Each day without an injunction invites still more entrants into a small, emerging market where each new infringer further erodes Rare Breed's position, pricing power, and customer relationships.

### 6. Many Defendants Are Newly-Formed Entities Whose Maximum Per-Unit Profit Cannot Exceed Rare Breed's Per-Unit Loss—Making Any Future Judgment Likely Uncollectible

If there is a substantial probability that Rare Breed would not be able to collect a damages award, then money damages are not an adequate remedy. *See Aspen Tech., Inc. v. M3 Tech., Inc.*,

569 F. App'x 259, 273 (5th Cir. 2014). Two grounds support Defendants' likely inability to pay. First, newly formed entities with limited operating history are unlikely to have the capital to satisfy a damages award. *See Symbol Techs., Inc. v. Janam Techs. LLC*, 729 F. Supp. 2d 646, 665 (D. Del. 2010) (finding potential irreparable harm because a "young business" may lack "sufficient[] capital[] to be able to pay" damages); *see also EcoNova*, 2012 WL 5944257, at *15.

Second, when the gap between what an infringer earns and what it would owe is large enough, damages can be effectively uncollectible. In *Eli Lilly*, the Third Circuit affirmed an irreparable harm finding where the infringer's annual profits of $2 million could not cover a judgment measured against the patentee's $100 million in annual sales. 630 F.2d at 137.

The math here is no different. ABC and RBT collectively lose ▮▮▮▮▮ in profit on each displaced sale. DeMonico Decl. ¶ 59. Even at an impossible 100% profit margin, each Defendant can never net more than Rare Breed's per-unit loss of ▮▮▮▮▮. A lost-profits-based judgment will necessarily exceed any Defendant's ability to pay, even before trebling damages or awarding attorneys' fees.

In summary, Rare Breed is losing customers and sales, watching its pricing and reputation erode, and facing a growing wave of infringement—all by companies who have no apparent possibility of satisfying a judgment.

## C.     The Balance of the Equities Favors the Requested Injunctive Relief

Balancing the equities requires the Court to weigh the harm Rare Breed will suffer without an injunction against the harm Defendants will suffer if one is entered. *Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1369 (Fed. Cir. 2017). This factor rarely defeats a preliminary injunction unless the equities tilt heavily toward the accused infringer. *See Hybritech*, 849 F.2d at 1457–58.

On one side, Rare Breed faces lost market share to direct competitors, lost technical lead time, price erosion, reputational harm, and the risk that, even if it succeeds on the merits, it may never be able to collect a full damages award. *See supra* § IV.B; *Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1170–71 (Fed. Cir. 2014) (recognizing early displacement weighs heavily in the patentee's favor in a small niche market with limited sales opportunities); *Kemin Foods, L.C. v. Pigmentos Vegetales del Centro A.A. de C.V.*, 240 F. Supp. 2d 963, 979–80 (S.D. Iowa 2003) (finding equities favored patentee that created and depended on a focused market).

On the other side, Defendants' harms are limited and self-inflicted. Where an accused infringer proceeds in the face of known patent rights, courts give little weight to claims of hardship. *Windsurfing Int'l v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected."); *see also Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 931 (Fed. Cir. 2012). Any harm flowing from an injunction against this continued infringement is not the kind of hardship the balance-of-equities factor protects. *See Windsurfing*, 782 F.2d at 1003 n.12; *see also Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir. 1983).

Three independent reasons show that any claimed hardship to Defendants is entitled to little or no equitable weight.

### 1. Defendants Had Notice of Rare Breed's Patent Rights and Continued Selling Anyway

Every Defendant here had notice of Rare Breed's patent rights, and continued selling anyway. Notice took multiple forms. A subset of Defendants received pre-suit cease-and-desist letters identifying the Asserted Patents and the Accused Products. On March 28, 2025, Rare Breed sent these letters to Hanes; on March 31, 2025, Rare Breed sent letters to 80Mills, DNT, Gunworks,

and Nguyen; and on April 1, 2025, Rare Breed sent a letter to Z3. DeMonico Decl. ¶ 34, Exs. M–R. MaRs received notice via a conference call between Rare Breed's President, Lawrence DeMonico, and Peter Brennen, the owner of MaRs, around March 2025. DeMonico Decl. ¶ 34. Other Defendants received notice through service of the operative complaint in their respective member cases. Optics Planet was served on February 3, 2026;[10] ProSource, March 5, 2026.[11] Mister Guns, PistolCap, and Superior had notice of the complaint at least by March 13, 2026, when they each filed an Unopposed Application for Extension of Time to Answer Complaint.[12] And every Defendant had further, public notice as of February 11, 2026, when the Eastern District of Tennessee preliminarily enjoined the Super Safety design after finding it likely to infringe two of the Asserted Patents. *Hoffman*, Dkt. 45; Colvin Decl., Ex. GG. With the sole exception of the Hoffman Defendants—who are bound by that order—every Defendant continued selling the Accused Products after the *Hoffman* order issued. DeMonico Decl. ¶ 37. Any hardship Defendants now claim from an injunction flows directly from that choice. *See Smith Int'l*, 718 F.2d at 1581; *Celsis*, 664 F.3d at 931.

### 2.    Defendants Built Their Business on Infringement

A Defendant who builds its business on a product later enjoined "cannot be heard to complain" when the injunction issues. *Windsurfing*, 782 F.2d at 1003 n.12. Courts in this Circuit and others have consistently discounted hardship claims from infringers whose businesses are recently formed and infringement-dependent. *See, e.g.*, *EcoNova*, 2012 WL 5944257, at *15 (finding balance of hardships weighed in patentee's favor in part because infringer knew of the patents and

---

[10] Case No. 26-cv-521, Dkt. 12.
[11] Case No. 26-cv-55, Dkt. 9.
[12] Case No. 26-cv-56, Dkt. 11 (Mister Guns Mot. for Ext. of Time); Case No. 26-cv-53, Dkt. 9 (PistolCap Mot. for Ext. of Time); Case No. 26-cv-58, Dkt. 11 (Superior Mot. for Ext. of Time).

risked infringement); *Hoffman*, Dkt. 45 ¶¶ 33–34 (rejecting hardship claim where defendant "presented no evidence of any substantial investment" in non-infringing business activity).

That principle applies with particular force to Defendants whose businesses were formed during, or only recently before, the period of infringement—and whose product offerings consist primarily or exclusively of the Accused Products. This includes: Defendants Cope, Hanes Tactical, Gunworks, MaRs, DNT, Z3, and Polymer Pew. *See supra* §§ II.C.1, IV.B.5; *see generally also* App. A. Their claim of hardship is, in substance, a claim that they will lose the business they built on infringement—exactly the harm *Windsurfing* and its progeny refuse to credit.

### 3. Diversified Defendants Will Lose Only a Small Slice of Their Product Lines

The other set of Defendants—those that sell a broad range of firearms components and accessories—face only the loss of one or a few product lines from a much larger catalog. Federal courts give less weight to hardship claims from diversified sellers whose businesses can readily absorb the loss of an enjoined product line. *Gonza LLC v. Mission Competition Fitness Equip. LLC*, No. 21-cv-771, 2021 WL 5657193, at *7–8 (W.D. Tex. Dec. 1, 2021) (citing *Robert Bosch*, 659 F.3d at 1156) (holding, where the defendant "benefit[ted] from a more diverse product line," that the balance of hardships favored a preliminary injunction because the defendant's market presence "significantly impacts [the plaintiff's] business, while its removal is less impactful to [the defendant]").

That principle applies here in full to 80Mills, Mister Guns, Optics Planet, PistolCap, ProSource, and Superior. Colvin Decl., Exs. N, O, S, W; DeMonico Decl. ¶ 24. That is the converse of the patentee's position: whereas Rare Breed's entire business is the Accused Products' patented technology, the diversified Defendants would lose a small percentage of revenue from one of many product lines. The balance plainly tips toward Rare Breed.

Based on notice, business formation, and product diversity, the equities tip decisively in Rare Breed's favor. Any potential future harm to Defendants is the current harm plaguing Rare Breed. *Gonza*, 2021 WL 5657193, at *8. Rare Breed faces displacement from the market it pioneered, in the product line that forms its entire business. Defendants face only the consequence of stopping sales they chose to continue after notice. The balance favors injunctive relief.

### D.      The Requested PI Would Not Harm the Public Interest

Where the patentee practices its own inventions, as Rare Breed does, the public interest in enforcing valid patent rights "nearly always weighs in favor of protecting property rights in the absence of countervailing factors . . . ." *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 647 (Fed. Cir. 2015). No countervailing public interest favors access to cheaper, unregulated, and likely infringing products. To the contrary, the federal government stated that enforcing Rare Breed's patents advances public safety. In a Statement of Interest, the DOJ explained it has "a strong interest in promoting the safe use of firearms" and in "discouraging unregulated manufacture of [reset triggers] that allegedly infringe Rare Breed's patents." Colvin Decl., Ex. JJ at 1. "[P]ublic interest should be weighed heavily in plaintiffs' favor." *Id.* at 7. And at least one Defendant has marketed deeply discounted infringing products while acknowledging that the product has a defect.[13] Defendants' continued sales thus not only infringe Rare Breed's patents; they pose their own danger to the public interest. An injunction would address both concerns simultaneously.

---

[13] *See Rainbow Mechanic Super Safe Special 3-Pack*, DNT, https://deeznutztactical.com/product/rainbow-mechanic-super-safe-special-3-pack/ (accessed May 20, 2026) ("A 3 Pack of the cheapest Rainbow cams available from any vendor . . . These cams will most likely require some sanding or clearancing to fit in your receiver. No warranty, all sales are FINAL!"); Kitchen Sink Super Safeties 5 Pack, DNT https://deeznutztactical.com/product/blem-4140-5-pack/ (accessed 20 May, 2026) ("We have renamed our Blem packs to include blems, scratch & dents, returns that function test perfectly, vendor samples, etc. . . . No guarantees are made regarding cosmetic condition or function. Some fitment will be needed. Due to the discounted nature of these products, all sales are final.")

**E.        The Court Should Require No Security, or Alternatively, Nominal Security**

Under Rule 65(c), the movant is required to give security only "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "[T]he amount of security required by the rule is a matter within the discretion of the trial court." *City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. 1981). The Court may elect to require no security at all. *Id.* The Defendants have not shown and cannot show they would suffer damage if the Court were to grant the requested relief and thus maintain the status quo in this case.

**V.        CONCLUSION**

For the above reasons, Rare Breed respectfully asks this Court to grant the Motion for a Preliminary Injunction and enjoin Defendants; their "officers, agents, servants, employees, and attorneys"; and anyone in "active concert or participation" with Defendants and their officers, agents, servants, employees, or attorneys from participating in infringing activities.

40

DATED: May 28, 2026

Respectfully submitted,

_/s/ Matthew A. Colvin_

Matthew A. Colvin
Texas Bar No. 24087331
Carl E. Bruce
Texas Bar No. 24036278
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
E-mail: colvin@fr.com
         bruce@fr.com
Tel: (214) 747-5070
Fax: (214) 747-2091

Benjamin J. Christoff
DC Bar No. 1025635
**FISH & RICHARDSON P.C.**
1000 Maine Avenue SW, Suite 1000
Washington, DC 20024
E-mail: christoff@fr.com
Tel: (202) 783-5070
Fax: (202) 783-2331

Glenn D. Bellamy _(admitted pro hac vice)_
**WOOD HERRON & EVANS LLP**
600 Vine Street, Suite 2800
Cincinnati, OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6234

Melissa R. Smith
Texas State Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
Fax: (903) 934-9257
E-mail: melissa@gillamsmithlaw.com

_Attorneys for Plaintiffs_
_ABC IP, LLC and Rare Breed Triggers, Inc._

41

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing

document has been served on May 28, 2026, to all counsel of record via electronic mail.


/s/ Matthew A. Colvin
Matthew A. Colvin

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rules CV-7(h) and (i), counsel for Plaintiffs attempted to meet with counsel for Defendants to discuss the parties' positions on this motion. Counsel for Plaintiffs, Benjamin J. Christoff, emailed counsel for Defendants on May 15, 2026, to schedule telephonic meetings regarding Defendants' position on the motion. During meetings conducted between May 18 and May 22, Defendants' Counsel stated that they would provide their positions on the motion, but Plaintiffs' Counsel did not receive their positions. Plaintiffs' Counsel sent a follow-up email on May 22 again seeking Defendants' positions, but did not receive responses from Defendants' Counsel. Plaintiffs consider the motion opposed.

*/s/ Matthew A. Colvin*
Matthew A. Colvin

**CERTIFICATE OF MOTION TO FILE UNDER SEAL**

The undersigned hereby certifies that a Motion for Leave to File Under Seal this document, the supporting Declaration of Richard Eichmann, and the supporting Declaration of Lawrence DeMonico and accompanying exhibits A – D have been filed with the Court prior to the submission of these documents as Dkt. No. 5.

/s/ Matthew A. Colvin
Matthew A. Colvin